# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:20-cv-44-KDB
# (5:18-cr-48-KDB-DSC-5)

| | |
|---|---|
| **RICARDO CERVANTES-SANCHEZ,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| vs. | ) **ORDER** |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Respondent.** | ) |
| | ) |

**THIS MATTER** is before the Court on Petitioner's *pro se* Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

### I. BACKGROUND

Petitioner was indicted along with 14 co-defendants in a narcotics distribution conspiracy. (5:18-cr-48, Doc. No. 3). Petitioner was charged in Count (1) with conspiracy to distribute and possess with intent to distribute one or more controlled substances (21 U.S.C. § 841(a)(1). (Id., Doc. No. 3 at 1). The Indictment specifically charged that the amount involved in the conspiracy attributable to Petitioner and as a result of his own conduct, and the conduct of other conspirators reasonably foreseeable to him, is "at least 50 grams of methamphetamine (actual);" "at least 500 grams of a mixture and substance containing methamphetamine;" and "at least 5 kilograms of a mixture and substance containing cocaine" in violation of § 841(b)(1)(A). (Id., Doc. No. 3 at 1).

The parties entered into a written Plea Agreement that is signed by the prosecutor, defense counsel, and Petitioner. (Id., Doc. No. 239). The Plea Agreement provides that Petitioner was pleading guilty to Count (1) and admitted to being in fact guilty as charged in Count (1). (Id., Doc. No. 239 at 1). The Agreement provides that Petitioner's sentencing exposure is a minimum term

1

of 10 years' imprisonment and a maximum term of life, a $10,000,000 fine, or both, and no less than five years of supervised release. (Id., Doc. No. 239 at 2). The parties agreed to jointly recommend that the Court find under the U.S. Sentencing Guidelines that "**[t]he amount of a mixture and substance of methamphetamine that was known or reasonably foreseeable by the defendant was in excess of 15 kilograms, but less than 45 kilograms….**" (Id., Doc. No. 239 at 2) (emphasis added). The United States agreed that the plea is timely for purposes of § 3E1.1(b), if applicable. (Id.). The parties agreed that either party may argue their respective positions regarding any other specific offense characteristics, cross-references, special instructions, reductions, enhancements, departures, and adjustments to the offense level. (Id.).

The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty, including his express waiver of his appellate and post-conviction rights except for claims of ineffective assistance of counsel or prosecutorial misconduct. (Id., Doc. No. 239 at 4). With regards to the effects of the plea, the Plea Agreement states:

> **The defendant recognizes that pleading guilty may affect the defendant's immigration status** if the defendant is not a citizen of the United States. The defendant understands that no one can predict with certainty the effect of the defendant's conviction(s) on the defendant's immigration status. The defendant nevertheless seeks to plead guilty, even if the consequence is the defendant's automatic removal from the United States.

(Id., Doc. No. 239 at 5) (emphasis added).

The Plea Agreement provides that Petitioner stipulated to the existence of a factual basis for the plea and that he read and understood the Factual Basis filed with the Plea Agreement, and that it can be used by the Court, U.S. Probation Office, and the United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence under 18 U.S.C. § 3553(a). (Id., Doc. No. 239 at 3). The Agreement provides that the

2

Factual Basis does not necessarily represent all of the conduct relevant to sentencing and that the United States may present additional relevant facts prior to or at sentencing. (Id.).

The written Factual Basis is signed by defense counsel, who certified that he read and discussed with Petitioner and was satisfied that Petitioner understood it, and which Petitioner did not dispute. (Id., Doc. No. 240 at 2). The Factual Basis provides:

> 1. From at least 2016 through July of 2018, the defendant, Ricardo CERVANTES-SANCHEZ ("RICA"), knowingly and intentionally conspired with Jesus BEDOLLA, Clayon RIVERA-TREJO, Joey CARROLL, Robert LONG, Ricky MOSES and others in Catawba County, within the Western District of North Carolina, and elsewhere, to distribute and possess with intent to distribute controlled substances, to wit: methamphetamine, a Schedule II controlled substance; cocaine, a Schedule lI controlled substance; and marijuana, a Schedule I controlled substance.
>
> 2. During the conspiracy, the defendant was a kilogram-level distributor of marijuana, cocaine, and methamphetamine, operating mainly out of Tennessee and North Carolina.
>
> 3. **The defendant, in furtherance of the conspiracy, distributed multiple kilograms of methamphetamine to CARROLL. The defendant also distributed multiple kilograms of methamphetamine to MOSES/LONG**.
>
> 4. BEDOLLA worked for the defendant for approximately two years, primarily in Tennessee, during 2016-2018. In furtherance of the conspiracy, BEDOLLA would perform tasks at the request of the defendant. These tasks included wiring money, picking up packages of narcotics, and selling narcotics.
>
> 5. On March 14, 2018, New Jersey State police seized approximately 12 kilograms of methamphetamine from within the rear door panels of a black 2009 Cadillac CTS, located on a car hauler traveling on Interstate 78 in New Jersey. The Cadillac was previously observed at the defendant's residence in Hickory, North Carolina, in February 2018. A SIM card was located in the center console under the cup holder of the Cadillac CTS. The phone number on the SIM card belonged to CARROLL.
>
> 6. Also in March of 2018, the defendant communicated with BEDOLLA about newly arriving methamphetamine, telling BEDOLLA he had "30 coming." On April 1, 2018, the defendant made contact with a courier to pick up a load of methamphetamine and provided instructions for the courier to follow the defendant

in a separate vehicle so the methamphetamine could be unloaded. Shortly thereafter, a vehicle stop of the identified load vehicle driven by the courier was conducted and a search resulted. Law enforcement seized approximately **13.41 kilograms (29.58 pounds) of methamphetamine** from the courier's vehicle during the traffic stop. [fn. 1] Based on a lab test, **this methamphetamine was 98% pure and contained 13.14 kilograms of methamphetamine (actual).**

7. In July of 2018, the defendant arranged for the pick up of methamphetamine in Kansas City. The defendant arranged for BEDOLLA to transport the methamphetamine to Tennessee on his behalf. On July 14, 2018, BEDOLLA was stopped by law enforcement on I-40 in Tennessee. Inside a hidden compartment in his vehicle, BEDOLLA was in possession of approximately **1.36 kilograms of methamphetamine**, which he was transporting for the defendant. [Fn. 2] **Based on lab test, this methamphetamine was 95% pure and contained 1.29 kilograms of meth (actual)**.

8. In an interview with law enforcement agents on July 16, 2018, BEDOLLA acknowledged that during the conspiracy he was present with the defendant at residences in Tennessee where multiple kilograms of methamphetamine were located.

9. During the conspiracy, RIVERA-TREJO was also paid by the defendant to drive the defendant around, run errands, deliver narcotics and collect money.

10. **The amount of a mixture and substance of methamphetamine that was known to or reasonably foreseeable to the defendant was more than 15 kilograms, but less than 45 kilograms, resulting in a Base Offense Level of 36**.

(Id., Doc. No. 240) (emphasis added).

A Rule 11 hearing came before Magistrate Judge David Keesler on March 6, 2019. Petitioner stated under oath that he understood the charges against him and the consequences of the plea including the maximum and minimum penalties he faced if convicted and possible deportation. (Id., Doc. No. 395 at 5-7). Petitioner confirmed that he spoke to counsel about how the U.S. Sentencing Guidelines may apply to his case, that the sentence has not yet been determined and the guidelines have not yet been calculated, and that he may receive a sentenced higher or lower than called for by the guidelines. (Id., Doc. No. 395 at 7-9). Petitioner admitted his guilt of the offense charged in Count (1). (Id., Doc. No. 395 at 9). The prosecutor summarized

4

the terms of the Plea Agreement in open court including that the amount of methamphetamine reasonably foreseeable to Petitioner in Count (1) was in excess of 15 kilograms but less than 45 kilograms and agreed with those terms and signed the Plea Agreement. (Id., Doc. No. 395 at 9-10). Petitioner stated that he understood the Plea Agreement, reviewed it carefully with counsel, and entered into the Plea Agreement freely and voluntarily without threats, intimidation, coercion, or promises of leniency or a light sentence. (Id., Doc. No. 395 at 12-14). Petitioner specifically stated that he understood that he was waiving the right to appeal his sentence and the right to challenge his conviction and/or sentence in a post-conviction proceeding. (Id. Doc. No. 395 at 7-9, 12). Petitioner stated that he discussed the Factual Basis with counsel, understood it, and agreed with it. (Id., Doc. No. 395 at 13). Petitioner stated that he was satisfied with his attorney and "[h]e's done a fine job…." (Id., Doc. No. 395 at 14). Petitioner heard and understood all parts of the proceeding, still wished to plead guilty, and had no questions or statements. (Id.). Counsel stated that he reviewed each of the terms of the Plea Agreement with Petitioner and was satisfied that Petitioner understood its terms. (Id., Doc. No. 395 at 15).

The Presentence Investigation Report ("PSR") calculated the base offense level as 36 pursuant to U.S. Sentencing Guidelines § 2D1.1(a)(5) for at least 15 kilograms but less than 45 kilograms of methamphetamine. (Id., Doc. No. 301 at ¶ 24). Three levels were added because Petitioner was a manager or supervisor and the criminal activity involved five or more participants or was otherwise extensive. (Id., Doc. No. 301 at ¶ 27). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 36. (Id., Doc. No. 301 at ¶¶ 31-33). Petitioner had zero criminal history points and a criminal history category of I. (Id., Doc. No. 301 at ¶¶ 41-42). The resulting advisory imprisonment range was 188 to 235 months. (Id., Doc. No. 301 at ¶ 70).

Counsel filed Objections to the PSR arguing that Petitioner should not receive a role enhancement and requesting a downward variance based on Petitioner's personal characteristics and mitigating circumstances. (Id., Doc. No. 300). However, the objection was withdrawn at the sentencing hearing and the parties agreed that the PSR's calculation was correct. (Id., Doc. No. 394 at 5). The parties stipulated that the Court could rely on the offense conduct set forth in the PSR to establish a factual basis. (Id., Doc. No. 394 at 3). Petitioner confirmed that he had the opportunity to read the PSR and discuss it with counsel. (Id., Doc. No. 394 at 4-5). Counsel presented argument about Petitioner's characteristics and mitigating circumstances at the sentencing hearing and read a statement on Petitioner's behalf. (Id., Doc. No. 394 at 5-9). The Government requested a sentence at the bottom of the advisory guideline range of 188 months' imprisonment. (Id., Doc. No. 394 at 12).

The Court adopted the PSR without change and, in a Judgment entered on October 16, 2019, sentenced Petitioner at the bottom of the guidelines range to 188 months' imprisonment followed by five years of supervised release. (Id., Doc. No. 376); see (Id., Doc. No. 377). Petitioner did not appeal.

Petitioner filed the instant *pro se* Motion to Vacate on March 30, 2020.[1] (Doc. No. 1). He appears to argue that counsel was ineffective for failing to: object to the PSR's calculation of the drug amount based on 15-45 kilograms of methamphetamine actual rather than a mixture, which resulted in a base offense level of 36 rather than 29; request a preliminary hearing on drug amount; object to the role enhancement; address deportation; and seek a downward variance. Petitioner

---

[1] Houston v. Lack, 487 U.S. 266 (1988) (establishing the prison mailbox rule); Rule 3(d), Rules Governing Section 2255 Proceedings for the United States District Courts ("[a] paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing….")

seeks the appointment of counsel, an evidentiary hearing, and a sentence calculated based on an offense level of 29.

## II. LEGAL STANDARD

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970). The Court has also determined that no response by the Government is required.

## III. DISCUSSION

### (A) Waiver

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). Rather, he is limited "to attacks on the voluntary and intelligent nature of

7

the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id.

An appellate waiver is generally enforceable where the waiver was knowingly and voluntarily made. United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). The Fourth Circuit does not distinguish between the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in a plea agreement. See United States v. Lemaster, 403 F.3d 216, 200 (4th Cir. 2005). There are narrow exceptions to the enforceability of plea waivers such that "even a knowing and voluntary waiver of the right to appeal cannot bar the defendant from obtaining appellate review of certain claims." United States v. Johnson, 410 F.3d 137, 151 (4th Cir. 2005). For instance, because "a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court[,] ... a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Marin, 961 F.2d at 496 (emphasis added).

In the instant case, Magistrate Judge Keesler conducted a thorough Rule 11 colloquy and concluded that Petitioner was pleading guilty knowingly and voluntarily with a full understanding of his plea's consequences, including the appellate and post-conviction waivers. In pleading guilty, Petitioner specifically admitted that he is guilty of conspiracy to distribute and possess with intent to distribute one or more controlled substances and that the amount attributable to Petitioner or reasonably foreseeable to him is "at least 50 grams of methamphetamine (actual);" "at least 500 grams of a mixture and substance containing methamphetamine;" and "at least 5 kilograms of a mixture and substance containing cocaine…." (Id., Doc. No. 3 at 1). The Plea Agreement that Petitioner knowingly and voluntarily entered into provides that "[t]he amount of a mixture and

substance of methamphetamine that was known or reasonably foreseeable by the defendant was in excess of 15 kilograms, but less than 45 kilograms…." (Id., Doc. No. 239 at 2); (Id., Doc. No. 395 at 9-10). The Factual Basis that Petitioner read, discussed with counsel, and admitted was true, provided that "[t]he amount of a mixture and substance of methamphetamine that was known to or reasonably foreseeable to the defendant was more than 15 kilograms, but less than 45 kilograms, resulting in a Base Offense Level of 36. (Id., Doc. No. 240).

Petitioner's present unsupported and self-serving attempts to disavow these admissions will be rejected. Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., Lemaster, 403 F.3d at 221 ("[A]llegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'").

**(B) Ineffective Assistance of Counsel**

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689).

9

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007).

Liberally construing the Motion to Vacate, it appears that Petitioner may be arguing that counsel was ineffective for failing to inform him of the immigration consequences of his guilty plea, which rendered his plea involuntary. This claim is conclusively refuted by the record. Petitioner admitted in the written Plea Agreement that counsel advised him that the guilty plea may have adverse immigration consequences including deportation and removal. (5:18-cr-48, Doc. No. 239 at 5). Petitioner confirmed his understanding of these potential immigration consequences during the Rule 11 hearing under oath in open court. (Id., Doc. No. 395 at 6). Moreover, Petitioner has failed to demonstrate prejudice. He only seeks sentencing relief and does not seek to withdraw his guilty plea. Therefore, he has failed to satisfy Strickland's prejudice prong by showing that there is a reasonable probability that he would not have pled guilty but for counsel's alleged misadvice.

Petitioner raises a number of claims of ineffective assistance with regards to sentencing that will be addressed in turn. First, Petitioner's contention that counsel miscalculated the drug amount and should have objected to the PSR is conclusively refuted by the record. Petitioner admitted that he is guilty of the Count (1), which charged a conspiracy to distribute and possess with intent to distribute narcotics and that the amount attributable to Petitioner was at least 50 kilograms of methamphetamine (actual). (Id., Doc. No. 3). The Plea Agreement and Factual Proffer state that the applicable amount is between 15 and 45 kilograms of methamphetamine which carries an offense level of 36. (Id., Doc. Nos. 239, 240). Petitioner agreed to this drug amount under oath at the Rule 11 hearing. (Id., Doc. No. 395 at 10, 12). The PSR calculated the offense level in accordance with the Plea Agreement and Factual Proffer as 36 based on 15 to 45 kilograms of methamphetamine. (Id., Doc. No. 301). Petitioner's admissions about the drug amount attributable to him relieved the Government of its obligation to prove these facts. Counsel had no obligation to request a "preliminary hearing" or require that the Government prove the drug amount in any way in light of Petitioner's admissions. Counsel cannot be deemed ineffective for failing to object to facts contained in the PSR to which Petitioner stipulated as part of his free and voluntary guilty plea. Petitioner's attempts to disavow these facts and blame counsel for miscalculating the drug amount are refuted by his own sworn admissions and will be rejected. See Blackledge, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., Lemaster, 403 F.3d at 221 ("[A]llegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'").

11

Next, Petitioner argues that counsel was ineffective for failing to object to the three-level role enhancement as a manager or supervisor of a criminal activity involving five or more participants or that was otherwise extensive. (Id., Doc. No. 301 at ¶ 27). Although counsel did file such an objection, it was withdrawn at the sentencing hearing. (Id., Doc. No. 394 at 5). Counsel did not err by withdrawing the objection because the enhancement is supported by the undisputed record. Petitioner pled guilty to a conspiracy to distribute and possess with intent to distribute large amounts of narcotics along with 14 co-defendants. The Factual Basis, to which Petitioner agreed at the Rule 11 hearing, provides that Petitioner conspired with Bedolla, Rivera-Trejo, Carroll, Long, Moses, and others, as a kilogram-level distributor of marijuana, cocaine, and methamphetamine and details several multi-kilogram drug deals for that Petitioner arranged using other co-defendants. (Id., Doc. No. 240). Petitioner fails to explain what arguments or evidence counsel should have presented with regards to the role enhancement that had a reasonable probability of resulting in a lower sentence. Petitioner has failed to demonstrate that counsel performed ineffectively by failing to dispute a role enhancement that is supported by the record including Petitioner's admitted acts. This claim will therefore be denied.

Petitioner also argues that counsel was ineffective for failing to argue that Petitioner should receive a downward variance from the advisory guideline range. This claim is refuted by the record insofar as counsel argued that Petitioner should receive a downward variance based on Petitioner's personal characteristics and mitigating circumstances. (Id., Doc. No. 300); see also (Id., 394 at 5-9). Petitioner fails to explain what more counsel could have presented that had a reasonable probability of resulting in a sentence below the 188-month sentence at the bottom or the advisory range that Petitioner received. This claim will therefore be denied.

IV. CONCLUSION

For the foregoing reasons, Petitioner's § 2255 Motion to Vacate is denied.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's pro se § 2255 Motion to Vacate, (Doc. No. 1), is **DENIED**.

2. Pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3. The Clerk is instructed to close this case.

Signed: May 20, 2020

Kenneth D. Bell
United States District Judge